NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

|                          |   |                               |
|--------------------------|---|-------------------------------|
|                          | : |                               |
| LORENZO HARDWICK,        | : |                               |
|                          | : | Civil Action No. 12-7158(RBK) |
| Petitioner,              | : |                               |
|                          | : |                               |
| v.                       | : | **OPINION**                   |
|                          | : |                               |
| UNITED STATES OF AMERICA,| : |                               |
|                          | : |                               |
| Respondent.              | : |                               |
|                          | : |                               |

---

**KUGLER**, United States District Judge.

## I. INTRODUCTION

On November 21, 2012, Petitioner Lorenzo Hardwick ("Hardwick") filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, challenging his 2005 conviction and sentence for conspiracy to distribute, and possess with intent to distribute, more than one kilogram of heroin and more than 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846, and possession of a weapon in furtherance of a drug trafficking crime under 18 U.S.C. § 924(c). (2255 Mot., ECF No. 1.)[1] On April 4, 2014, Hardwick filed an all-inclusive amended § 2255 motion, alleging that he received

---

[1] ECF page citations are to the page of the document assigned by the Court's Case Management/Electronic Case Files (CM/ECF).

ineffective assistance by trial counsel and appellate counsel. (All-Inclusive Amended § 2255 Mot., ECF No. 16.) Respondent filed an answer opposing relief (Answer, ECF No. 19), and Hardwick filed a reply. (Reply, ECF No. 22.) For the reasons discussed below, the Court denies the § 2255 motion.

## II.  BACKGROUND

On February 22, 2005, a federal grand jury in Camden, New Jersey returned an eight-count Superseding Indictment charging Bernard Murray, Allen Resto, Lorenzo Hardwick, Jose Rodriguez and Ramon Saldana with drug and firearms crimes. *United States v. Perez, et al.*, Criminal Action No. 02-684-5(RBK)("*Perez*") (Superseding Indictment, ECF No. 144.) Count One alleged a conspiracy, lasting from January 1998 to September 2002, to distribute, and possess with intent to distribute, more than one kilogram of heroin and more than 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A) and 21 U.S.C. § 846. (*Id.*, ¶1.) Hardwick and other individuals were named as members and associates of the Perez Organization, which was alleged to have controlled and directed street-level distribution of heroin and crack at drug sets in Camden. (*Id.*, ¶2.)

In the Superseding Indictment it was alleged that the Perez Organization controlled Camden drug sets located at 5th & Grant Streets, 9th & Cedar Streets, 26th Street & River Road, and 7th & Vine Streets, and it sought to expand its operations by opening

2

additional drug sets in Camden, including at Louis & Whitman Streets and 34th & Federal Streets. (*Id.*) It was further alleged that several of the drug sets were associated with the Sons of Malcolm X, a Camden-based street gang that distributed controlled substances through drug sets to which the Perez Organization claimed ownership and controlled through the use of violence and threats of violence. (*Perez*, Superseding Indictment, ECF No. 144, ¶2.)

The Superseding Indictment specified the roles that Hardwick and others played in the Perez Organization. (*Id.*, ¶3.) Enrique Perez, Bernard Murray and Allen Resto were partners who directed the Perez Organization's drug distribution activities and mediated disputes among the members; Murray obtained crack for the organization and arranged for its distribution; Carlos Hernandez supplied heroin; Hardwick, along with Joseph LaCourt, Arnaldo Gomez, and Ramon Saldana, acted as managers who coordinated the drug distribution activities of the drug sets and collected the proceeds from the drug sales; Linda Castner worked at drug sets; and Anthony Perez and Jose Rodriguez, among others, processed heroin for the Organization. (*Id.*)

In the Superseding Indictment it was also alleged that the Perez Organization maintained control over and protected its operation through violence and threats of violence, including the February 19, 2001 murder of Hiram Rosa; the March 11, 2001 murder

of Kenneth Allen; the October 20, 2001 murder of Troy James; and the conspiracy during August and September 2002 to murder M.D. (*Id.*, ¶13.)

The Superseding Indictment contained a number of additional counts. Counts Three through Five charged Murray, Resto and Hardwick respectively with possessing, brandishing, discharging and using a firearm during 1998 to 2002, in furtherance of the drug-trafficking conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(C), and 2. (*Perez*, Superseding Indictment, ECF No. 172 at 6-8.) Count Six charged Murray, Resto and Hardwick with possessing, brandishing, discharging and using firearms in furtherance of the drug-trafficking conspiracy on February 19, 2001 (referring to the murder of Hiram Rosa), in violation of 18 U.S.C. §§ 924(c)(1)(A), (c)(1)(C), and 2. (*Id.*, p. 9.)

On March 25, 2003, Hardwick was indicted, with twelve co-conspirators, in another drug conspiracy in violation of 21 U.S.C. § 846. *United States v. Tuten, et al.*, 03-cr-228-4(FLW) (D.N.J.)("Tuten")(Indictment, ECF No. 1, March 25, 2003). Of the co-conspirators who proceeded to trial, only Hardwick was acquitted. (*Tuten*, Judgment, ECF No. 317.)

Hardwick's trial in the instant matter commenced on April 18, 2005, along with Defendants Murray, Resto, and Rodriguez. (*Perez*, Minute Entry, ECF No. 196.) The jury rendered its verdict of guilty on all counts on June 6, 2005. (*Perez*, Minute Entry, ECF No. 275.)

After the verdicts, Hardwick unsuccessfully moved for a new trial. (*Perez*, Mot. for Acquittal, ECF No. 278; Minute Entry, April 28, 2006, ECF No. 319.) Hardwick was sentenced on April 28, 2006, and received a life sentence on Count One, and additional consecutive sentences based on his 18 U.S.C. § 924(c) conviction; a consecutive five-year term of imprisonment on Count Five, and a consecutive 25-year term of imprisonment on Count Six, for a total of life imprisonment plus 30 years (360 months) consecutively. (*Perez*, Judgment, ECF No. 320.)

Hardwick filed a timely notice of appeal (*Perez*, Notice of Appeal, ECF No. 327), which was consolidated with appeals of his co-defendants (*Perez*, Mandate of USCA, ECF No. 389.) The Third Circuit Court of Appeals addressed the merits of two issues:[2] (1) whether a waiver in a proffer agreement that allows the Government to use a defendant's proffer statements as part of its case-in-chief at trial is valid and enforceable; and (2) whether admission of that proffer statement violated the Confrontation Clause rights

---

[2] The Third Circuit summarily dismissed Hardwick's following claims as without merit: (1) acceptance of Captain Joseph Bowen as an expert on the Sons of Malcolm X was prejudicial error; (2) the Assistant United States Attorney's vouching statements during closing argument were reversible error; (3) the late admission of pretrial statements of co-defendant Bernard Murray violated the Confrontation Clause and constitutes reversible error; (4) use of unproven, judicially found facts to enhance defendant's sentence beyond the statutory maximum found by the jury was improper and requires defendant's sentence to be vacated. *United States v. Hardwick*, 544 F.3d 565, 567 n.1. (3d Cir. 2008).

of other defendants who were implicated in that proffer statement. *Hardwick*, 544 F.3d at 567.

The Third Circuit found no reversible error and affirmed the convictions. *Id.* at 568. However, the United States conceded that it had charged multiple § 924(c) counts improperly and sought a remand to this Court for resentencing consistent with a Justice Department policy memorandum. The Third Circuit ordered the remand. *Id.* at 574.

This Court held a resentencing hearing on January 5, 2010. (*Perez*, Resentencing Transcript, ECF No. 415.) The Court sentenced Hardwick to life imprisonment on Count 1, and a consecutive 60-month sentence on Count 5 under 18 U.S.C. § 924(c). (*Id.*) Hardwick filed a notice of appeal on January 8, 2010. (*Perez*, Notice of Appeal, ECF No. 419.) The Third Circuit affirmed Hardwick's sentence on November 21, 2011. *United States v. Hardwick*, 455 F. App'x. 151 (3d Cir. 2011.)

Hardwick, in his all-inclusive amended § 2255 motion, alleges the following grounds for relief:

> Ground One: ineffective assistance of appellate counsel for failure to raise double jeopardy and collateral estoppel on direct appeal
>
> Ground Two: ineffective assistance of trial counsel for failure to object to violation of Amendment 599 at sentencing hearing
>
> Ground Three: ineffective assistance of trial counsel for failure to object to hearsay and

other crimes evidence of Agent Sweeney, testifying that Petitioner was the target of unsolved murders in Camden

Ground Four: ineffective assistance of appellate counsel for failing to raise issue that the presence of a gun is not enough to trigger a conviction under 18 U.S.C. § 924(c)

Ground Five: ineffective assistance of appellate counsel for failing to appeal drug amounts outside Petitioner's participation in the conspiracy

Ground Six: ineffective assistance of trial counsel for failing to appeal the application of U.S.S.G. §2D1.1 because Government failed to prove that the substance was crack

Ground Seven: ineffective assistance of appellate counsel for failing to appeal mandatory minimum 10-year to life sentence minus the jury finding of threshold amounts attributed to Petitioner

Ground Eight: ineffective assistance of trial counsel for failing to ask for a jury instruction that Petitioner could not conspire with Jose Perez because a conspiracy cannot rest on an agreement with a government informer

Ground Nine: the increase in Petitioner's mandatory minimum sentence on Count One violated the Sixth Amendment and Petitioner's right to a jury.

(All-Inclusive Am. Mot., ECF No. 16, ¶12; *see also* Supp. Mem. of

Law in Supp. of Lorenzo Hardwick's All-Inclusive Am. Mot. § 2255

to Vacate Petitioner's Sentence and Conviction ("Petr's Mem.") ECF

Nos. 16-2 and 16-3.)

III. DISCUSSION

A.   Standard for Motion to Vacate, Set Aside or Correct
     Sentence under 28 U.S.C. § 2255

28 U.S.C. § 2255, a motion to vacate, set aside or correct a
sentence of a person in federal custody, entitles a prisoner to
relief if "the sentence was imposed in violation of the
Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence
was in excess of the maximum authorized by law, or is otherwise
subject to collateral attack…" 28 U.S.C. § 2255(a). When
considering a § 2255 motion, a district court "'must accept the
truth of the movant's factual allegations unless they are clearly
frivolous on the basis of the existing record.'" *United States v.
Tolliver*, 800 F.3d 138, 141 (3d Cir. 2015)(quoting *United States
v. Booth*, 432 F.3d 542, 545 (3d Cir. 2005)(quoting *Gov't of V.I.
v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989)). A district court must
*sua sponte* hold a hearing on the motion "'if the files and records
do not show conclusively that [the movant] was not entitled to
relief.'" *Id.* (quoting *Solis v. United States*, 252 F.3d 289, 294
(3d Cir. 2001).

For the reasons discussed below, the records in this matter
conclusively show that Hardwick is not entitled to relief,
therefore, an evidentiary hearing is unnecessary.

B.   Standard for Ineffective Assistance of Counsel Claims

An ineffective assistance of counsel claim has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Furthermore, the first prong of the test "requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985) (quoting *Strickland*, 466 U.S. at 688)). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) (citing *Bell v. Cone*, 535 U.S. 685, 702 (2002); *Kimmelman v. Morrison*, 477

U.S. 365, 382 (1986); *Strickland*, 466 U.S. at 689; *United States v. Cronic*, 466 U.S. 648, 656 (1984)).

The second prong of the *Strickland* test, prejudice, requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Collins v. Sec. of Pennsylvania Dept. of Corr.*, 742 F.3d 528, 547 (3d Cir. 2014) (quoting *Strickland*, 466 U.S. at 694).

The "ultimate focus" of the prejudice inquiry is on the fundamental fairness of the proceeding. *Id.* at 696. "Prejudice is viewed in light of the totality of the evidence at trial and the testimony at the collateral review hearing." *Collins*, 742 F.3d at 547 (citing *Rolan v. Vaughn*, 445 F.3d 671, 682 (3d. Cir. 2006)). A court need not address both components of the ineffective assistance inquiry. *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

C.   Ground One(a): Double Jeopardy

Hardwick contends his appellate counsel was ineffective by failing to raise double jeopardy and collateral estoppel on direct appeal. (Petr's Mem., ECF No. 16-2 at 2-11.) In support of his double jeopardy claim, Hardwick contends the first and second

conspiracy prosecutions were not distinct from each other. (Petr's Mem., ECF No. 16-2 at 4.) First, he asserts that he was incarcerated in a state prison from 1996 through April 5, 2000, and both alleged conspiracies overlapped with this period. (*Id.* at 8.)

Second, Hardwick was charged in the instant case with participating in a drug distribution conspiracy involving one kilogram or more of heroin and 50 grams or more of crack cocaine from January 1998 until September 2002. (*Id.*) On March 25, 2003, Hardwick was indicted in the Tuten/Paulk Case for participating in a drug distribution conspiracy involving five kilograms or more of cocaine and 50 grams or more of cocaine from October 2000 to March 2003. (*Id.* at 3.)

In Hardwick's trial in the instant matter, his counsel, Jerome A. Ballarotto, made an oral motion of double jeopardy. (Petr's Mem., ECF No. 16-2 at 3.) Hardwick's appellate counsel did not raise double jeopardy on appeal. (*Id.* at 4.)

Hardwick cites the following additional facts in support of his claim that the first and second conspiracy prosecutions were not distinct:

- location of both conspiracies is a section of North Camden and South Camden

- the investigations for the Perez/Murray and Tuten/Paulk cases were conducted jointly

- conspiracies were the same timeframe for Petitioner

- Perez was a defendant in the Perez/Murray Case and an unindicted confidential source in the Tuten/Paulk Case; Mark Lee was co-defendant and testified against Petitioner in the Tuten/Paulk Case, and he was an unindicted witness against Petitioner in the Perez/Murray Case; other individuals testified in both cases as well

- Petitioner played the same role in both conspiracies and was charged with similar overt acts, both conspiracies he was an enforcer who purchased bulk quantities of drugs, mid-level manager in both conspiracies, in the Tuten/Paulk Case he was charged with killing Sidney Harvey on behalf of the Tuten Organization, in the Perez/Murray Case he was charged with participating in the killing of Hiram Rosa on behalf of the Perez Organization, and in both he was accused of using violence and threats of violence on members of conspiracy and rival organization

- Petitioner claims the only difference is that the Tuten/Paulk case "had more players" and 5 kilos of cocaine was charged.

(Petr's Mem., ECF No. 16-2 at 7-11.)

In opposition, the Government contends the lack of overlap in personnel of the conspiracies and the dissimilarity in overt acts and roles in the conspiracies weigh heavily in favor of the government. (Answer, ECF No. 19 at 11.) Hardwick is the only overlapping member in the two conspiracies. (*Id.*) In the Tuten/Paulk Second Superseding Indictment there were no overt acts

charged.[3] (Answer, ECF No. 19 at 11-12.) Under the Perez/Murray Indictment, Hardwick was charged with the overt act of the murder of Hiram Rosa. (*Id.* at 12.) The separate conspiracies charged came from separate conspiratorial agreements because the murder was the driving force in the Perez/Murray Indictment. (*Id.*) No evidence relating to the Rosa murder was introduced at the Tuten/Paulk trial. (Answer, ECF No. 19 at 12.)

Although there is significant overlap in the timing and location of the conspiracies, the Government contends this is not significant because Camden was a high volume drug trafficking area. (*Id.*) The Government concludes that Hardwick's appellate counsel made a reasonable professional judgment that this issue was not worthy of inclusion in an appeal. (*Id.*)

"The Fifth Amendment guarantees that no person shall 'be subject for the same offense to be twice put in jeopardy of life or limb.'" *United States v. Smith*, 82 F.3d 1261, 1266 (3d Cir. 1995)(quoting U.S. Const. amend. V.) Multiple conspiracy indictments raise special concerns that successive indictments for a single conspiracy might withstand double jeopardy scrutiny if the court places undue weight upon the evidence used to prove the commission of the overt acts alleged. *Id.* at 1266-67 (citing *United*

---

[3] The Government is not required to prove an overt act in furtherance of a conspiracy in a prosecution under 21 U.S.C. § 846. *United States v. Shabani*, 513 U.S. 10, 11 (1994).

*States v. Liotard*, 817 F.2d 1074, 1078 (3d Cir. 1987). In analyzing whether there were separate conspiracies prosecuted without violating the double jeopardy clause, the focus is on the agreement that constitutes the crime, not on the overt acts. *Id.* at 1267 (quotations omitted.)

The Third Circuit adopted a four-factor test in double jeopardy claims based on multiple conspiracy prosecutions to determine whether there was one or more conspiracies:

> (a) the "locus criminis" of the alleged conspiracies; (b) the degree of temporal overlap between the conspiracies; (c) the overlap of personnel between the conspiracies, including unindicted co-conspirators; and (d) the similarity in the overt acts charged and role played by the defendant in each indictment.

*Id.* at 1267 (quoting *Liotard*, 817 F.2d at 1078.) The test should not be applied rigidly because different conspiracies may warrant emphasizing different factors. *Id.* (citing *Ciancaglini*, 858 F.2d 923, 930 (3d Cir. 1988)).

The totality of the circumstances test was devised to determine whether there were two conspiracy agreements or only one. *United States v. Rigas*, 605 F.3d 194, 213 (3d Cir. 2010)(quotations and citations omitted). Additional factors the court can consider are "whether there was a common goal among the conspirators;" whether the agreement contemplated bringing out a continuous result that could only continue with the cooperation of

the conspirators; and "the extent to which the participants overlap in various dealings." *Id.* (quoting *United States v. Kemp*, 500 F.3d 257, 287 (3d Cir. 2007)(quoting *United States v. Kelly*, 892 F.2d 255, 259 (3d Cir.1989)). "[T]he defendant must show that the place, time, people, actions, and responsibilities are similar in both prosecutions." *Id.* "[A] court must 'look into the full scope of activities described and implied in the indictments.'" *Id.* (citing *Smith*, 82 F.3d at 1268.

In addressing the totality of the circumstances, the Court begins with the Indictments. The Perez/Murray Case was initiated on September 11, 2002. (*Perez*, Indictment, ECF No. 1.) The Tuten/Paulk Case was initiated on March 25, 2003. (*Tuten*, Indictment, ECF No. 1.) A Second Superseding Indictment was filed in Tuten/Paulk on August 3, 2004. (*Tuten*, Second Superseding Indictment, ECF No. 172.) The defendant conspirators included: Leonard Paulk, Lorenzo Hardwick, Martin Johnson, Gregory Brown, Stanley Crump, and Tyrone Judge. (*Id.*, ECF No. 172, Count I, ¶1.) Co-conspirators (who pled guilty prior to the Second Superseding Indictment) included Darnell Tuten, Alexander Pellot, Jermaine Waite, Jeffrey Howell, Lamont Powell, Mark Lee, Michael Moore, and Floyd Hohney. (*Id.*, ¶2.) These individuals and other unnamed co-conspirators were alleged to constitute the "Tuten Organization." (*Id.*)

The alleged agreement was to distribute and possess with intent to distribute one kilogram or more of heroin, and five kilograms or more of cocaine. (*Tuten*, Second Superseding Indictment, ECF No. 172, ¶1.) The Tuten Organization was alleged to control street level drug distribution in Camden at 9th and Elm Streets, 8th and Spruce Streets, Broadway and Stevens Streets, and Line and St. John Streets. (*Id.*, ¶2(a)). Tuten and Paulk, as the leaders of the Tuten Organization, directed the drug distribution activities. (*Id.*, ¶2(b)). Hardwick was alleged to have purchased bulk quantities of drugs from the Tuten Organization. (*Id.*, ¶2(h)).

The object of the conspiracy was to distribute controlled substances in Camden, New Jersey and elsewhere for profit. (*Id.*, ¶3.) The following activities were alleged as part of the conspiracy: obtain heroin and crack; process and package heroin and crack for distribution in Camden, New Jersey; sell heroin and crack at drug sets in Camden; use lookouts to minimize detection; retrieve, transfer and transport proceeds of drug sales; sell bulk quantities of heroin and crack to other members of the conspiracy or other drug dealers within or outside Camden; supply drugs to associates of Paulk when supply was limited; use violence and threats to maintain control and protect operations of the Organization, including attempted murder of Lamont Powell by Paulk and Johnson, and conspiracy to murder J.J. (*Id.*, ¶¶3-11.)

A Superseding Indictment was filed in the Perez/Murray Case on February 22, 2005, charging a conspiracy that operated from January 1998 to September 2002. (Perez, Superseding Indictment, ECF No. 144, Count I, ¶1.) The defendant conspirators included Bernard Murray, Allen Resto, Lorenzo Hardwick, Ramon Saldana, and Jose Rodriguez. (*Id.*) Named co-conspirators (who pled guilty prior to the Superseding Indictment) included Enrique Perez, Carlos Hernandez, Joseph LaCourt, Arnaldo Gomez, Anthony Perez, and Linda Castaner. (*Id.*, ¶2.) These individuals and others constituted the "Perez Organization." (*Id.*)

The alleged agreement was to distribute and possess with intent to distribute more than one kilogram of heroin and more than 50 grams of cocaine base in Camden, New Jersey and elsewhere. Specifically, the Perez Organization controlled and directed street-level distribution including the following locations in Camden: 5th and Grant, 5th and State, 9th and Cedar, 26th Street and River Road, and 7th and Vine streets. (*Id.*, ¶2(b)). Murray, Resto and Enrique Perez were the alleged directors of the Perez Organization. (*Id.*, ¶3(b)). Hardwick and others were managers who coordinated drug distribution by other individuals who worked for the Perez Organization, and collected proceeds from drug sales. (*Id.*, ¶3(d)).

The purpose of the conspiracy was to profit from distributing heroin and crack in Camden and elsewhere for profit. (*Id.,* ¶¶4-

8.) As part of the conspiracy, the Perez Organization allowed drug dealers outside of their organization to sell drugs other than crack and heroin in their territories. (*Id.*, ¶9.) Further activities of the conspiracy involved transporting proceeds from drug sales; using lookouts to avoid detection; opening new drug sets at Louis and Whitman Streets, and 34th and Federal Streets; and controlling and protecting the operation by violence and threats of violence, including the murders of Hiram Rosa, Kenneth Allen, and Troy James. (*Id.*, ¶¶10-13.)

Here, the fact that there is an overlap in the timing of the conspiracies and the types of activities involved in the conspiracies does not suggest a single conspiracy because the two operative Indictments described two distinct drug operations, one run by Tuten and Paulk, and one run by Perez and Murray, operating on different street corners in Camden. It is significant that Hardwick was the only named conspirator alleged to have been part of both drug organizations, and that he was alleged to have a greater role in the Perez/Murray Case. This is consistent with separate agreements to distribute drugs on behalf of distinct groups acting in control over different drug distribution territories in Camden.

In the Tuten/Paulk Case, in which Hardwick was acquitted, the only specific allegation in the Second Superseding Indictment was that he purchased bulk quantities of drugs from the Tuten

Organization. In contrast, in the Perez/Murray Case, Hardwick was alleged to have been a manager who controlled drug sets operating on specific intersections in Camden, none of which overlapped with the intersections described in the Tuten/Paulk Case. Buying a bulk quantity of drugs from one drug organization is not inconsistent with managing drug sets from a different organization in the same city. It is significant that the Second Superseding Indictment in the Tuten/Paulk Case alleged the Tuten Organization sold bulk quantities of heroin and crack to its own members *and to other drug dealers in Camden*, which is consistent with Hardwick drug dealing on behalf of the Perez Organization.

Furthermore, the fact that Hardwick was implicated with a role in the murder of Hiram Rosa in protection of the Perez Organization is a distinguishing factor between the conspiracies.[4] The two operative Indictments indicate Hardwick had much greater involvement in the Perez Organization than in the Tuten

---

[4] The Third Circuit Court of Appeals made the following findings of fact regarding evidence of Hardwick's role in the murder of Hiram Rosa:

> At trial, several witnesses testified to the participation of Hardwick and Resto in the murders of Rosa and Allen. Ricky Perez detailed the roles played by himself, Resto, Murray, and Hardwick in the killings of Rosa and Allen. Another witness named Arnaldo Gomez described the escalating dispute between Rosa and Hardwick.

*Hardwick*, 544 F.3d at 574.

Organization. The members of the two organizations overlapped only with Hardwick in each. The lack of overlapping members and lack of overlapping street corners in Camden controlled by each alleged conspiracy strongly supports the conclusion that the Indictments charged two separate conspiracies. *See U.S. v. Travillion*, 759 F.3d 281, 298 (3d Cir. 2014)(where the parties involved in two conspiracies, with the exception of one person, did not have a singular agreement and did not overlap in all respects, there was "no basis for inferring that all conspirators were tied together into one conspiracy")(quoting *Smith*, 82 F.3d at 1268.) A double jeopardy challenge was unlikely to succeed. Therefore, appellate counsel was not ineffective for failing to raise the issue of double jeopardy.

D.    Ground One(b): Collateral Estoppel

Hardwick also contends his appellate counsel was ineffective for failing to appeal on the basis of collateral estoppel. (Petr's Mem., ECF No. 16-2 at 5-11.) Hardwick contends the alleged conspiracies were not distinct, thereby barring the entire trial in Perez/Murray. (*Id.* at 6.) Specifically, he asserts that the Government's failure to prove he joined the Tuten/Paulk conspiracy to distribute heroin and cocaine from 2000 through March 2003, barred the Government from asserting any conspiracy to distribute heroin and cocaine in Camden during that timeframe. (*Id.* at 11.)

Hardwick concludes that appellate counsel was ineffective for failing to raise the issue on direct appeal. (*Id.*)

The Government responds that collateral estoppel only bars reintroduction of evidence relating to the charge for which the defendant was previously acquitted. (Answer, ECF No. 19 at 12-13.) Because the two conspiracies charged in the Tuten/Paulk and Perez/Murray Cases were distinct, the Government asserts collateral estoppel does not apply. (*Id.*)

In reply, Hardwick points to trial testimony in the Perez/Murray Case that Tuten supplied Hardwick with heroin and cocaine, and that members of the two organizations had discussions about what they would sell and where they would sell it. (Reply, ECF No. 22 at 11.) He also notes that in the Perez/Murray trial, Enrique Perez testified that he supplied Hardwick with heroin, who distributed it with Tuten. (*Id.* at 15.) Hardwick argues any finder of fact would conclude that certain key members of both organizations agreed to work with one another in various dealings. Therefore, Hardwick concludes that the two organizations could not continue without an agreement to assist one another, suggesting that there was only one overall conspiracy for which he was acquitted. (*Id.*)

Hardwick also notes his trial counsel had argued that certain testimony from the Tuten/Paulk trial should have been barred from the Perez/Murray trial. (*Id.* at 17.) Thus, Hardwick asserts his

appellate counsel was ineffective for failing to raise the collateral estoppel issue on direct appeal. He contends appellate counsel chose to raise only weak issues that were rejected by the Third Circuit. (Reply, ECF No. 22 at 18-19.)

"The doctrine of collateral estoppel ensures that 'when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *United States v. Rigas*, 605 F.3d 194, 217 (3d Cir. 2010)(quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). To invoke collateral estoppel, a defendant "bears the burden of demonstrating that the issue he seeks to foreclose was actually decided in the first proceeding." *Rigas*, 605 F.3d at 217 (quoting *Dowling*, 493 U.S. 342, 350-51 (1990)). "'[S]ince it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant.'" *Id.* (quoting *United States v. McGowan*, 58 F.3d 8, 12 (2d Cir. 1995)(internal quotation marks & citation omitted in original)).

To determine whether collateral estoppel bars retrial following a general verdict of acquittal, a court must examine the record of the prior proceeding and ask "whether a rational jury could have grounded its verdict upon an issue other than that which

the defendant seeks to foreclose from consideration." *Rigas*, 605 F.3d at 218 (quoting *Ashe*, 397 U.S. at 445-46.)

First, as discussed above, the Court rejects Hardwick's proposition that the two cases involved only one overarching conspiracy. There were two distinct drug dealing conspiracies operating on different street corners in Camden, one headed by Tuten and Paulk, and one headed by Perez and Murray, each for their own financial benefit.

Hardwick refers to his trial counsel's objection to the testimony of Mark Lee, who testified earlier at the Tuten/Paulk trial. The prosecutor in the instant case told the court Mark Lee would testify that Hardwick started appearing at Ninth and Elm streets in Camden, where Lee sold crack, looking for a man named Floyd Hohney. (*Perez*, Trial Tr. at 141.)[5] Hohney owed Hardwick money for heroin Hardwick gave him to sell. (*Id.*) Lee's testimony was offered only as evidence of Hardwick's familiarity with heroin trafficking in North Camden. (*Id.* at 491-92.)

Hardwick's trial counsel, Mr. Balloratto, argued Lee's testimony should not come in because it was offered as evidence of the Tuten conspiracy. (*Id.* at 493.) The prosecutor argued the testimony was offered only to show Hardwick's familiarity with

_____

[5] The trial transcript and sentencing transcript of April 28, 2006 are not available on the Court's electronic filing system. Page citations to these transcripts are to the original documents.

dealing heroin in North Camden, which was intrinsic to the Perez conspiracy. (*Id.* at 495.) The prosecutor explained that Lee would not testify where Hardwick obtained the heroin that he gave Hohney, only that Hardwick had heroin during the relevant time-frame, and he gave the heroin to someone for distribution. (*Id.* at 498.) The evidence was admitted only to show that Hardwick was generally involved in drug dealing with heroin, but not that he was involved in any other conspiracy. (*Perez*, Trial Tr. at 499-500.) The court agreed to consider a limiting instruction at the appropriate time. (*Id.* at 1434.)

Also at trial, Mr. Balloratto moved to exclude a tape recording with conversations between Joe [Jose] Perez, Darnell Tuten and Hardwick because the conversation was about the conspiracy in the Tuten/Paulk case. (*Perez*, Trial Tr. at 1028.) The prosecutor argued that the conversation should be admitted to show Hardwick's knowledge of drug trafficking and involvement in drug trafficking. (*Id.* at 1029.) Mr. Balloratto countered that the evidence was admitted in the Tuten/Paulk case to show Tuten supplied drugs to Perez and Hardwick, therefore it was part of the Tuten conspiracy, not the Perez conspiracy. (*Id.* at 1030.)

The court explained that the evidence was offered only to show Hardwick's knowledge of the particular drug deal, not that it was part of a conspiracy. (*Id.* at 1032.) In other words, it was offered only to show Hardwick had intrinsic knowledge of drug

deals, not of particular drug deals related to the Tuten conspiracy. (*Id.* at 1033.)

For purposes of collateral estoppel, this Court must determine the ultimate issue(s) of fact decided in the Tuten/Paulk Case, in which Hardwick was acquitted. The Second Superseding Indictment in Tuten/Paulk alleged that the Tuten/Paulk conspirators, including Hardwick, sold bulk quantities of heroin and crack to other members of the conspiracy or other drug dealers within or outside Camden. (*Tuten*, Second Superseding Indictment, ECF No. 172.) The general verdict acquitting Hardwick in the Tuten/Paulk trial established only that Hardwick was not part of the conspiracy to sell drugs for the benefit of the Tuten/Paulk conspiracy. The verdict did not preclude testimony in a subsequent trial that Hardwick purchased drugs from Tuten for some purpose other than to benefit the Tuten Organization. Therefore, appellate counsel was not ineffective for failing to appeal the conviction on the basis of collateral estoppel, based on admission of Lee's testimony or the tape recording of conversations between Tuten, Jose Perez and Hardwick.

E.    Ground Two:  U.S.S.G. Amendment 599

Hardwick asserts the district court improperly applied a weapon enhancement under 18 U.S.C. § 924(c) based on murder of Hiram Rosa, which was the relevant conduct in connection with his participation in the drug conspiracy. (Petr's Mem., ECF No. 16-2

at 75-81.) He contends Amendment 599 precludes application of a guideline weapon enhancement under such circumstances. (*Id.* at 80.)

The Government responded that the underlying offense for the § 924(c) enhancement was the drug conspiracy, not the murder of Hiram Rosa, and the sentence for the drug conspiracy was not enhanced by any of the facts that supported violation of 18 U.S.C. § 924(c). (Answer, ECF No. 19 at 13.) Therefore, Amendment 599 is simply inapplicable. (*Id.*)

"Amendment 599 amended the Commentary to U.S.S.G. § 2K2.4, which is the Guideline applicable to use-of-firearm convictions under 18 U.S.C. § 924(c)." *Norwood v. U.S.*, 472 F. A'ppx. 113, 119 (3d Cir. 2012). Under the Amendment, a "defendant's use of a firearm, which already had led to the conviction and sentence under § 924(c), should not be 'double counted' by serving also as the basis for an enhancement of some other offense." *Id.* (citing *United States v. Hickey*, 280 F.3d 65, 68 (1st Cir. 2002)). "Amendment 599 modified that Commentary in order to 'clarify under what circumstances defendants sentenced for violations of 18 U.S.C. § 924(c) in conjunction with convictions for other offenses may receive weapons enhancements contained in the guidelines for those other offenses.'" *Id.* (emphasis in original)(quoting U.S. Sentencing Guidelines Manual, Supp. to Appx. C., Am. 599, Reasons for Amendment (2010)). Amendment 599 refers to offense-specific

enhancements, and if for example, the career criminal Guideline was applied, Amendment 599 is inapplicable. *Id.*

In Hardwick's first appeal to the Third Circuit Court of Appeals, the Government conceded Hardwick should only have been sentenced for one conviction under § 924(c). *Hardwick*, 544 U.S. at 574. The Third Circuit remanded for resentencing solely on that issue, consistent with the Justice Department policy memorandum cited by the Government. *Id.* Upon remand, this Court vacated the prior sentences and imposed a life sentence on Count One, and a 60-month term of imprisonment on Count Five, consecutive to each other. (*Perez*, Resentencing Tr., ECF No. 415 at 22.) Count Five of the Superseding Indictment charged that Hardwick did knowingly and willfully possess, brandish, discharge and use a firearm in furtherance of a drug trafficking crime. (*Perez*, Superseding Indictment, ECF No. 144 at 8.)

Hardwick's sentence for drug conspiracy on Count One was not enhanced by any of the facts that supported his conviction on Count Five for violation of 18 U.S.C. of § 924(c). (*Perez*, Sentencing Tr., ECF No. 363; Resentencing Tr., ECF No. 415.) At the original sentencing hearing, the Court found the PSI was correct in finding a total offense level of 45 and a criminal history category of six. (*Perez*, Sentencing Tr. ECF No. 363; *see also* Addendum to PSR, ECF No. 16-3 at 60-62.) The Court imposed a sentence of life imprisonment on Count One, after consideration of the factors under

18 U.S.C. § 3553(a). (*Perez*, Sentencing Tr. at 63.) As one of the factors, the Court mentioned Hardwick's role in the murder of Hiram Rosa, as found by the jury. The Court noted that its sentence would be the same if the Guidelines were not taken into account, and only the statutory factors were considered. (*Id.*)

The Court did not impose an enhancement for possession of a firearm in its sentencing on Count One. Therefore, Amendment 599 is inapplicable. Hardwick's appellate counsel did not provide ineffective assistance by failing to raise a meritless argument. *Buehl v. Vaughn*, 166 F.3d 163, 173-74 (3d Cir. 1999)(where a competent appellate attorney could reasonably conclude that a particular claim was unlikely to succeed, counsel was not ineffective for failing to raise the claim on appeal.) Count Two of the § 2255 motion is denied.

F.   Ground Three:  Ineffective Assistance of Trial Counsel Based on Failure to Object to Hearsay and Admission of 404(b) Evidence

In Ground Three, Hardwick contends his trial counsel was ineffective for failing to object, on the grounds of hearsay and improper 404(b) evidence, to FBI Agent Sweeney's testimony that after speaking to detectives in the city police department, the Violent Crimes Task Force decided to target a group believed to be headed by Enrique Perez for their involvement in certain homicides. (Petr's Mem. ECF No. 16-2 at 82.) Because he was charged with being part of Enrique Perez's group, Hardwick maintains that Sweeney's

testimony improperly suggested to the jury that Hardwick committed "earlier uncharged homicides." (*Id.* at 83.)

The Government asserts that Sweeney's testimony "is characteristic of the general rule permitting law enforcement officers to testify about the reasons for their investigative activities. (Answer, ECF No. 19 at 15.) Special Agent Sweeney, an FBI officer, was entitled to testify that certain homicides led him to investigate the Perez Organization, and justified federal involvement in the case. (*Id.* at 17.) The hearsay statement by Sweeney came from Sergeant Frank Falco of the Camden County Prosecutor's Office, who testified about the Camden County Prosecutor Office's investigations of the homicides. (*Id.*)

The Government notes that Hardwick had the opportunity to cross-examine Falco about the investigations referred to by Sweeney. (*Id.*) Therefore, this was not the type of case where hearsay by an anonymous source was offered for the truth. (*Id.*) Even if counsel had objected to the testimony and it was excluded, the Government asserts there was ample testimony from members of the conspiracy about the murders of Rosa, Allen and James. (*Id.*)

In his reply, Hardwick relies on *United States v. Rivas*, 493 F.3d 131 (3d Cir. 2007); *United States v. Price*, 458 F.3d 202 (3d Cir. 2006), and other cases that found an abuse of the rule permitting police testimony about the context of an investigation. (Reply, ECF No. 22 at 23-26.)

29

The Third Circuit Court of Appeals has noted "'the use of out-of-court statements to show background has been identified as an area of 'widespread abuse.'" *Price*, 458 F.3d 202, 208 (3d Cir. 2006)(quoting *United States v. Sallins*, 993 F.2d 344, 346 (3d Cir. 1993)). The duty of the court "is to carefully scrutinize the actual evidentiary function that ostensibly "background" evidence played at trial, to see whether it really served any legitimate non-hearsay function." If the non-hearsay value of the testimony is *de minimus* but the hearsay value is great, the testimony should be excluded. *Price*, 458 F.3d at 208.

The underlying concern of allowing hearsay testimony as background is whether the government is "seeking to indirectly present testimony from an unseen eyewitness who did not himself appear." *Id.* at 209.

> The evidentiary danger posed by the police officers' testimony about the contents of reports received in connection with the performance of their duties is greatest when the government does not put on direct evidence of the substance of the reports. That danger is least, by contrast, when the direct source of the report personally testifies as to the precise facts related in the report.

*Id.* at 209-210. When the out-of-court declarant testifies at trial, the police officer's testimony about what the out-of-court declarant said was probably not offered for its truth. *Id.* at 211.

Here, FBI Special Agent Sweeney testified that in the past several years he had been chiefly working with the Camden FBI

Violent Crimes Task Force (the "Task Force"). (*Perez*, Trial Tr. at 443.) He described how the Task Force was created in 1994, based on a large number of unsolved homicides in Camden. (*Id.*) The Task Force was made up of four FBI agents, four investigators from the Camden County Prosecutor's Office, and four officers or detectives from the Camden Police Department. (*Id.*)

Sweeney explained that before April 2001, the Task Force operated by going into the streets of Camden to "develop cooperators" with respect to the unsolved murders. (*Perez*, Trial Tr. at 444.) This was not very successful in solving homicides, but the Task Force developed a large amount of intelligence about "the criminal element" in Camden. (*Id.*) In April 2001, the Task Force "decided to target a group [they] believed to be headed by Enrique Perez that [they] suspected was [] involved in some of these homicides." (*Id.*)

Sweeney testified that the murders of Hiram Rosa and Kenneth Allen in North Camden in February and March 2001 became the focus of the Task Force investigation. (*Id.*) In May 2001, the Task Force went into North Camden to photograph and identify the individuals involved in selling drugs at certain corners or "drug sets." (*Id.* at 447-48.) Sergeant Frank Falco responded to the crime scenes of the shootings of Rosa and Allen, and he testified at trial. (*Id.* at 3544-64.)

During the homicide investigations, the Task Force used the information they gathered on the streets of North Camden in May 2001, to look for people who could cooperate in the investigation. (*Id. at 447-48.*) This led them to Jose ("Joey") Perez. (*Id.* at 448-49.) Joey Perez agreed to wear a recording device for the FBI, posing as a drug dealer from Vineland. (*Id.* at 500.)

Rick Perez testified that he pled guilty to manslaughter with respect to the homicide of Hiram Rosa. (*Perez*, Trial Tr. at 4261.) He further testified that Hardwick drove the rented van that they used to go looking for Rosa. (*Id.* at 4464-4480.) Rick Perez admitted that at first he told police Fu [Hardwick] was the shooter. (*Id.* at 4485.) He later told the truth, that he was the shooter and Hardwick drove the van. (*Id.*)

David Lopez testified that he pled guilty to conspiring to kill Kenneth Allen, whose nickname was Smoochie. (*Id.* at 3706.) Tito Allen, Rick Perez and Bernard Murray [B-Nice] told Lopez to kill Smoochie because he was causing trouble with their drug dealing activities. (*Id.* at 3706-3806.) They provided Lopez with a gun, and helped chase Smoochie down. (*Id.*) Lopez testified that on March 11, 2001, he shot Smoochie on 9th and Vine in Camden. (*Id.* at 3791-3806.) When Smoochie ran, Lopez chased him and shot him again, killing him. (*Id.* at 3791-3806.)

Thus, at trial, the Government presented witnesses who testified to killing Rosa and Allen, and described the

circumstances surrounding the murders, including who was involved. The Government had no reason to use Agent Sweeney to inject hearsay about the murders of Rosa and Allen for the purpose of suggesting Hardwick was the murderer. Sweeney's testimony was offered as context for his involvement in the drug conspiracy investigation. Therefore, defense counsel was not ineffective by failing to object on the basis of hearsay.

Moreover, there was no prejudice to Hardwick from Sweeney's testimony because Rick Perez and David Lopez testified to killing Rosa and Allen, leaving no reason for the jury to speculate that Sweeney's testimony suggested that Hardwick was responsible for the murders. Therefore, there was little basis for defense counsel to object to Sweeney's testimony as improper 404(b) evidence. *See Jones v. Barnes*, 463 U.S. 745, 754 (1983)(cautioning against "impos[ing] on . . . counsel a duty to raise every colorable claim on appeal.")[6]

---

[6] Hardwick made two additional arguments about hearsay testimony that the Government did not respond to. Hardwick claims counsel failed to object to Earl Wynn's hearsay testimony that "they charged FuQuan" for Huck's murder. (Petr's Mem., ECF No. 16-2 at 84.) The Court finds that Wynn did not testify that Fu Quan was charged for Huck's murder. The prosecutor questioned Wynn about a photograph, asking him to identify people he knew. (*Perez*, Trial Tr. at 1878.) The photograph had some names on it. (*Id.*) The prosecutor read a name on the photograph and asked Wynn what name he knew that person by. Thus, the prosecutor asked "Huck X?" and Wynn responded "Huck, he another member, he dead." (*Perez*, Trial Tr. at 1878.) Next, the prosecutor asked "Fu X?" and Wynn responded "Fu, that Fu Quan for Fu." (*Id.*) Wynn did not link Fu Quan to Huck's death. (*Id.*)

Petitioner also alleges his rights were violated when the court allowed Tanisha Rosa to deliver a victim impact statement to the court at sentencing regarding Hiram Rosa's murder because he was not convicted for Rosa's murder. (Petr's Mem., ECF No. 16-2 at 86.) Pursuant to 18 U.S.C. § 3771(a)(4), a crime victim has "[t]he right to be reasonably heard at any public proceeding in the district court involving release, plea, sentencing, or any parole proceeding." A crime victim is defined as "a person directly and proximately harmed as a result of the commission of a Federal offense…" 18 U.S.C. § 3771(e)(2). Further, "at sentencing, 'the court may consider relevant information ... provided that [it] has sufficient indicia of reliability to support its probable accuracy.'" *United States v. Clark*, 335 F. App'x 181, 184 (3d Cir. 2009)(quoting U.S.S.G. § 6A1.3(a)).

Hardwick was convicted of a drug conspiracy in which he participated in the killing of Hiram Rosa for the benefit of the operation of the Perez Organization in distributing drugs in its territory. Hiram Rosa's sister was obviously harmed by the murder of her brother in protection of the Perez Organization's drug

---

Hardwick also contends his trial counsel should have objected to hearsay by Witness Carlos Hernandez. (Petr's Mem., ECF No. 16-2 at 84.) Hardwick said Hernandez testified concerning a conversation he had about some murders that occurred, and he mentioned the name "Fu Quan" in connection with some of the targets for the homicides. (*Id.*) The Court has reviewed the entirety of Hernandez's testimony and did not find a hearsay statement connecting Fu Quan with the murders in 2001. (*Perez*, Trial Tr. at 2211-2460.)

dealing activities. Therefore, the victim impact statement was properly admitted at sentencing. Ground Three of the § 2255 motion is denied in its entirety.

G.   Ground Four:   Count Six of the Superseding Indictment

Hardwick asserts his appellate counsel should have argued that Count Six, his conviction under 18 U.S.C. § 924(c), should be vacated. (Petr's Mem. 16-3 at 5-6.) This issue is moot because the Court dismissed Count Six upon the Government's motion when Hardwick was resentenced after his direct appeal. (*Perez*, Judgment on Resentencing, ECF No. 418.)[7]

---

[7] Hardwick attempts to raise a new claim in his reply to Ground Four. (Petr's Mem., ECF No. 22 at 26-28.) He concedes that Count Six was dismissed, and then raised the new claim that there was an insufficient nexus between the drug trafficking conspiracy and his conviction in Count Five for violation of 18 U.S.C. § 924(c). The doctrine that a "'moving party may not raise new issues and present new factual materials in a reply brief that it should have raised in its initial brief'" extends to the habeas context because the opposing party is entitled to notice of and an opportunity to respond to a petitioner's claims. *Judge v. U.S.*, 119 F.Supp.3d 270, 284 (D.N.J. Aug. 11, 2015)(quoting *D'Allessandro v. Bugler Tobacco Co.*, Civil Action No. 05-5051, 2007 WL 130798, at *2 (D.N.J. Jan. 12, 2007)(quoting *Int'l Raw Materials, Ltd. v. Stauffer Chem. Co.*, 978 F.2d 1318, 1327 n. 11 (3d Cir. 1992)). The prohibition of raising new claims in a reply is particularly applicable in habeas cases where the petitioner was provided a "Miller Notice" advising him that all claims must be raised in one § 2255 motion. *Id.* (citing e.g. *Rodriguez v. United States*, Civil Action No. 04-158, 2005 WL 2007033, at *9 n.7 (D.N.J. Aug. 22, 2005)). Petitioner received a Miller Notice when he first filed his motion, and he subsequently filed an amended motion, which did not contain his claim about Count Five. (Miller Notices, ECF Nos. 13, 15; All-Inclusive Am. Pet., ECF No. 16.) In any event, this claim is without merit because the Government was not required to prove a specific time during the Perez conspiracy in which Hardwick

H.  Grounds Five, Six and Seven:  Ineffective Assistance of
    Appellate Counsel Regarding Sentencing

In Grounds Five, Six and Seven, respectively, Hardwick
contends that his appellate counsel was ineffective for (1) failing
to dispute drug amounts outside the scope of Hardwick's
participation in the conspiracy; (2) failing to appeal the
application of the crack cocaine sentencing enhancement; (3)
failing to request a jury instruction to determine the quantity of
drugs attributable to each defendant in the conspiracy.

1. Analysis of Ground Five and Seven

First, Hardwick asserts his appellate counsel should have
disputed the drug quantity in his PSR, which was based on Rick
Perez's testimony that the conspiracy involved more than 1.5
kilograms of crack and more than 30 kilograms of heroin (Petr's
Mem., ECF No. 16-3 at 12-14; Reply, ECF No. 22 at 31-32.) Hardwick
claims there is no support for these amounts in the trial record.

The Government responds that Hardwick, on direct appeal,
raised the issue that his sentence was improperly enhanced beyond
the statutory maximum by unproven judicially found facts, and the
Third Circuit summarily dismissed the claim as without merit.
(Answer, ECF No. 19 at 19, citing *Hardwick*, 544 F.3d at 567). The
Government further asserts the sentencing judge properly relied on

---

possessed a firearm in furtherance of the conspiracy, as discussed
at Hardwick's resentencing hearing. (Resentencing Transcript, ECF
No. 415.)

a special verdict sheet that contained a finding that Hardwick was part of a conspiracy to distribute more than 50 grams of cocaine and 1 kilogram of heroin, which established the statutory minimum sentence of 10-years imprisonment to life. (Answer, ECF No. 19 at 20.)

Indeed, on the special verdict form, the jury checked "yes" to the questions "[d]id the United States prove beyond a reasonable doubt that the conspiracy involved more than 50 grams of cocaine base"; "[d]id the United States prove beyond a reasonable doubt that the conspiracy involved 5 grams or more of cocaine base"; and "[d]id the United States prove beyond a reasonable doubt that the conspiracy involved at least 1 kilogram of heroin[.]" (*Perez*, Jury Verdict, ECF No. 275 at 2-3.)

The Third Circuit has held,

> [i]n drug conspiracy cases, *Apprendi* requires the jury to find only the drug type and quantity element as to the conspiracy as a whole, and not the drug type and quantity attributable to each co-conspirator. The finding of drug quantity for purposes of determining the statutory maximum is, in other words, to be an offense-specific, not a defendant-specific, determination. The jury must find, beyond a reasonable doubt, the existence of a conspiracy, the defendant's involvement in it, and the requisite drug type and quantity involved in the conspiracy as a whole.

*United States v. Whitted*, 436 F. App'x 102, 105 (3d Cir. 2011) (quoting *United States v. Phillips*, 349 F.3d 138 142-43 (3d Cir.

2003), *vacated and remanded on other grounds sub nom. Barbour v. United States*, 543 U.S. 1102 (2005). Therefore, counsel was not ineffective for failing to raise a meritless sentencing issue or for failing to request a jury instruction for finding the drug amount attributable to each defendant, and Grounds Five and Seven of the § 2255 motion are denied.

    2.    Analysis of Ground Six

Hardwick asserts his appellate counsel was ineffective for failing to appeal the district court's application of U.S.S.G. § 2D1.1, absent reliable and specific evidence that the substance involved was crack. (Petr's Mem., ECF No. 16-3 at 29.) The Government contends the finding in the special verdict sheet that the conspiracy involved over 50 grams of cocaine base supports application of § 2D1.1. (Answer, ECF No. 19 at 20.)

U.S.S.G. § 2D1.1(c) and Application Note D provide the base offense level for drug quantity amounts and Drug Equivalency Tables for convictions under 21 U.S.C. § 841(b)(1)(A), (b)(1)(B), or (b)(1)(C). For application of § 2D1.1, the Government must establish by a preponderance of the evidence that the substance is crack cocaine. United States v. Waters, 313 F.3d 151, 156 (3d Cir. 2002). A "precise chemical analysis in not necessary to prove that cocaine base is crack under the Sentencing Guidelines." *Id.* at 156 (quoting *United States v. Dent*, 149 F.3d 180, 190 (3d Cir. 1998) (citing *Roman*, 121 F.3d at 141)). "Crack" refers to the manner in

which cocaine is prepared for use by creating a "base" that can be smoked rather than sniffed like powder. *Id.*

The trial record is replete with testimony that the Perez/Murray Organization was in the business of selling crack and heroin in North Camden. Specifically, Rick Perez testified that Hardwick was permitted for a period of time to sell crack, provided by B-Nice, at 7th and Vine streets in Camden. (*Perez*, Trial Tr. at 4359-68.) Perez described the crack as "cooked up cocaine," which was cooked by a woman at 9th and Cedar for B-Nice. (*Id.* at 4364.) He testified that Fu Quan controlled distribution at 7th and Vine, where they sold crack and weed. (*Id.* at 4419.) After a lengthy trial, the jury returned the special verdict form finding the overall conspiracy involved over 50 grams of cocaine base. The evidence is sufficient to support application of § 2D1.1. The Court denies Ground Six of the § 2255 motion.

I.   Ground Eight:  Trial Counsel Failed to Request Jury Instruction that Conspiracy Cannot Rest on an Agreement with a Government Informer

In the Tuten/Paulk trial, Hardwick's counsel requested and was granted the following jury instruction,

> because Jose Perez was working under the direction of law enforcement, if you find that defendant conspired only with Perez, then that defendant cannot be found guilty of this conspiracy. On the other hand, if you find that a defendant conspired with others together with Jose Perez, then you may find a conspiracy.

(Petr's Mem., ECF No. 16-3 at 42). Hardwick argues that his trial counsel in the instant case provided ineffective assistance of counsel because he failed to request this same jury instruction. (*Id.*)

The Government responds that Hardwick was indicted, along with nine other individuals, of conspiring to distribute narcotics. (Answer, ECF No. 19 at 21-22.) Ultimately Hardwick was convicted, based on the special verdict sheet, of conspiring with Bernard Murray, Allen Resto, and Jose Rodriguez. (*Id.* at 22.) Therefore, no prejudice could result from counsel's failure to request a jury instruction that Hardwick was not guilty if he only conspired with Jose Perez. (*Id.*)

In reply, Hardwick asserts that when an indictment names a government informant as a co-conspirator defense counsel should request a *Sears* instruction. (Petr's Reply, ECF 22 at 42-46, citing *Sears v. United States*, 343 F.2d 139, 142 (5th Cir. 1965)).

"[W]hile there is no conspiracy 'when an individual conspires to violate a law with only one other person, and that person is acting as a government informant,'" if the evidence demonstrates the defendants were part of a larger conspiracy, the evidence is sufficient to support a conspiracy conviction. *United States v. Anin*, 544 F. App'x 59, 62 (3d Cir. 2013). Here, evidence was submitted to the jury, and the jury found that Hardwick conspired to distribute narcotics with Bernard Murray, Allen Resto, and Jose

Rodriguez, none of whom were government informants. Therefore, counsel was not ineffective for failing to request a jury instruction that Hardwick could not be guilty of conspiracy if he were found only to have conspired with Jose Perez.

J.  Ground Nine: Trial Court Erred by not Submitting to the Jury a Factual Issue that Increased the Mandatory Minimum Sentence

Hardwick contends that the trial court erred by adopting certain findings in the PSR that should have been submitted to the jury for factual determination pursuant to *Alleyne v. U.S.*, 133 S.Ct. 2151 (2013). (Petr's Mem., ECF No. 16-3 at 52.) The challenged findings, which were used to enhance Hardwick's sentence, were that Hardwick participated in the murder of Hiram Rosa on February 19, 2001, and that Hardwick was a manager in a criminal activity. (*Id.*) These findings were used to enhance Hardwick's sentence pursuant to U.S.S.G. §§ 2A1.1 and 3B1.1. (*Id.*) According to Hardwick, his base offense level was 38, based on his conviction and the PSR findings that (1) the total drug quantity involved in the conspiracy was 60,000 kilograms of marijuana (adjusted per the drug quantity table); (2) a 5-point increase for participation of Hiram Rosa pursuant to § 2A1.11, with cross-reference to 2D1.1; and (3) two point increase for role as manager in the conspiracy. (*Id.* at 54.)

The Government responds that *Alleyne* is not retroactively applicable on collateral review. (Answer, ECF No. 19 at 22-25.)

Furthermore, *Alleyne* is inapplicable to this case because there was no judicial fact finding. (Id. at 22.) All of the sentencing decisions made by the judge were based on facts found by the jury and reflected in the special verdict sheet. (*Id.*)

In *Alleyne v. United States*, the Supreme Court held that any fact that increased a mandatory minimum sentence was an element of the crime that had to be submitted to the jury and proved beyond a reasonable doubt. 570 U.S. 99, 103 (2013). *Alleyne* set forth a new rule of constitutional law that applies only to cases still on direct appeal. *United States v. Reyes*, 755 F.3d 210, 212 (3d Cir. 2014). In other words, *Alleyne* is not retroactively applicable on collateral review. Therefore, Ground Nine of the § 2255 motion fails to state a cognizable claim and is denied.

IV.  CONCLUSION

For the foregoing reasons, Hardwick's All-inclusive Amended Motion under 28 U.S.C. § 2255 is denied in its entirety.

V.  CERTIFICATE OF APPEALABILITY

The Court must assess whether a certificate of appealability should issue. A litigant may not appeal from a final order in a proceeding under 28 U.S.C. § 2255 without a certificate of appealability. 28 U.S.C. § 2253(c)(1)(B). A certificate of appealability shall not issue unless there is a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "Where a district court has rejected the

constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Based on the discussion above, reasonable jurists would not find it debatable that trial or appellate counsel provided ineffective assistance of counsel that prejudiced the defense.

Dated: <u>September 18</u>, 2018

s/Robert B. Kugler_____
**ROBERT B. KUGLER**
**United States District JUDGE**